# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 1:19-cv-08225<br>)<br>) |
| XCEL MED, LLC, an Illinois Limited Liability Company, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Nestlé HealthCare Nutrition, Inc. ("Nestlé"), by and through its attorneys, Faegre Baker Daniels LLP, for its Complaint against Defendant, Xcel Med, LLC ("Xcel"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages resulting from Xcel's breach of its contractual obligations to purchase medical nutritional products (the "Products") from Nestlé pursuant to a Purchase Agreement (the "Purchase Agreement").[1]

2. The Purchase Agreement required Xcel to annually purchase a minimum of $6,500,000 and ninety-five percent (95%) of its Products from Nestlé for at least a two-year period.

3. Despite its contractual obligations, Xcel informed Nestlé in June 2019, just months after entering into the Purchase Agreement, that it would not honor its commitments under the Purchase Agreement.

---

[1] The Purchase Agreement contains proprietary information entitled to protection from public disclosure. Plaintiff will provide a true and correct copy of the Purchase Agreement to the Court upon entry of an appropriate order and file a copy under seal if necessary.

4. Thereafter, Xcel refused to perform its contractual obligations under the Purchase Agreement and refused to do so at all times the contract was in effect, which constitutes anticipatory repudiation and a breach of the Purchase Agreement.

## THE PARTIES

5. Plaintiff Nestlé is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

6. Defendant Xcel is an Illinois limited liability company with its principal place of business in Harwood Heights, Illinois.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1332(a)(1), as Nestlé and Xcel are citizens of different States and more than $75,000 is in controversy.

8. The Court has personal jurisdiction over Xcel, as it is an Illinois limited liability company with its principal place of business in Harwood Heights, Illinois.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2). Xcel's principal place of business is in Harwood Heights, Illinois, which is within the judicial district for the United States District Court for the Northern District of Illinois. Additionally, a substantial part of Xcel's breach of the Purchase Agreement occurred in this judicial district. Lastly, Nestlé and Xcel agreed to a choice of venue clause, which provides that an action be brought only in the state where Xcel is located.

**FACTUAL BACKGROUND**

A.     The Purchase Agreement

10.    In March 2019, Nestlé and Xcel (the "Parties") entered the Purchase Agreement, effective April 1, 2019.

11.    Pursuant to the Purchase Agreement, Xcel agreed to purchase, on an annual basis, a minimum of $6,500,000 and ninety-five percent (95%) of its Products from Nestlé ("Xcel's Annual Dollar Commitment") for use in the provision of long-term care and home care services to Xcel's customers.

12.    The Purchase Agreement established the terms and conditions by which Xcel could purchase Products from Nestlé in accordance with a Group Purchasing Agreement (the "Premier Agreement"),[2] which afforded Xcel preferred pricing on the Products.

13.    The Purchase Agreement provided that, except as expressly stated therein, Xcel's purchases of Products shall be governed by the Premier Agreement.

14.    The Parties agreed that the Purchase Agreement shall continue in full force for five years and stated that no party could terminate the Purchase Agreement during the first two years.

15.    Pursuant to the Purchase Agreement, Xcel was required to achieve the Xcel Annual Dollar Commitment in the first contract year and each year thereafter.

16.    Pursuant to the Purchase Agreement, Xcel was required to provide Nestlé with a complete listing of all facilities, and associated information, currently serviced by Xcel, within 30 days after April 1, 2019, and an updated facilities list every month thereafter.

---

[2] The Premier Agreement contains proprietary information entitled to protection from public disclosure. Plaintiff will provide a true and correct copy of the Premier Agreement to the Court upon entry of an appropriate order and file a copy under seal if necessary.

17. Pursuant to the Purchase Agreement, Xcel was required to provide Nestlé with a list of all distributors utilized by Xcel.

18. Pursuant to the Purchase Agreement, the Parties agreed that if Xcel was unable to achieve its commitments, Nestlé had the right to adjust Product pricing or to terminate the Purchase Agreement.

19. The Purchase Agreement contained all agreements between the Parties and expressly disclaimed any and all other terms and conditions not specifically set forth in the Purchase Agreement or Premier Agreement.

20. Under the Premier Agreement, if a party breaches any provision of the contract, the non-breaching party shall notify the breaching party, in writing, of the specific nature of the breach and request that it be cured.

21. The Premier Agreement further provides that if the breaching party does not cure the breach within 30 days, then the non-breaching party may immediately terminate the agreement.

22. The Premier Agreement also provides that the prevailing party shall be entitled to receive its reasonable attorneys' fees and costs in addition to any other relief granted.

**B.     Xcel's Breach of the Purchase Agreement**

23. At first, Xcel appeared to comply with its contractual obligations under the Purchase Agreement.

24. In June 2019, however, Xcel informed Nestlé that it no longer intended to honor its commitments under the Purchase Agreement.

25. On June 12, 2019, Nestlé responded, in writing, stating that it considered Xcel's "position to be a direct and unequivocal material breach of Xcel's obligations under the [Purchase] Agreement" and demanded that Xcel "immediately reconsider [its] position and confirm . . . in

writing [its] intention to move forward with the conversion of Xcel facilities to Nestlé products in compliance with the [Purchase] Agreement and achieve the commitments set forth in [the Purchase] Agreement." A true and correct copy of Nestlé's June 12, 2019 letter is attached hereto as Exhibit A.

26. On July 16, 2019, rather than cure the specified breaches in Nestlé's June 12, 2019 letter, Xcel reiterated it would not honor its contractual obligations under the Purchase Agreement.

27. On July 23, 2019, Nestlé responded, in writing, reaffirming its position that Xcel's conduct was a direct and blatant breach of the Purchase Agreement. Additionally, Nestlé exercised its contractual right under the Purchase Agreement to raise prices offered to Xcel and reserved its right to pursue any legal remedies. A true and correct copy of Nestlé's July 23, 2019 letter is attached hereto as Exhibit B.

28. Given Xcel's continued refusal to perform its obligations under the Purchase Agreement, on October 10, 2019, Nestlé sent Xcel a letter "terminating the Purchase Agreement—effective immediately—based on Xcel's failure to timely cure its breach." A true and correct copy of Nestlé's October 10, 2019 letter is attached hereto as Exhibit C.

## COUNT I – BREACH OF CONTRACT

29. Nestlé expressly incorporates and restates its allegations in Paragraphs 1 through 28 as if fully set forth herein.

30. The Purchase Agreement is a valid and enforceable contract.

31. Nestlé performed its obligations under the Purchase Agreement.

32. Xcel has breached its obligations under the Purchase Agreement by, among other things, failing to fulfill its purchase commitments.

33. As a direct and proximate result of Xcel's breach of the Purchase Agreement, Nestlé has suffered damages, including, but not limited to, lost profits, incidental damages, consequential damages, and its reasonable attorneys' fees and costs, as well as any other damages available in law or in equity, including under 810 ILCS 5/2.

## COUNT II – ANTICIPATORY REPUDIATION
## 810 ILCS 5/2-610

34. Nestlé expressly incorporates and restates its allegations in Paragraphs 1 through 28 as if fully set forth herein.

35. The Purchase Agreement was a valid and enforceable contract for the sale of medical nutritional products.

36. Nestlé performed its obligations under the Purchase Agreement.

37. Merely months after the Purchase Agreement became effective, Xcel made an express and absolute refusal to perform its contractual obligations under the Purchase Agreement.

38. Despite Nestlé's June 12, 2019 and July 23, 2019 letters informing Xcel of its breach, Xcel continued to refuse to perform its obligations under the Purchase Agreement.

39. Xcel's express and absolute refusal to honor its obligations under the Purchase Agreement substantially impaired the value of the Purchase Agreement to Nestlé.

40. As a direct and proximate result of Xcel's repudiation of the Purchase Agreement, Nestlé suffered damages, including, but not limited to, lost profits, incidental damages, consequential damages, and its reasonable attorneys' fees and costs, as well as any other damages available in law or in equity, including those available under 810 ILCS 5/2-610.

US.125805770.05

WHEREFORE, Nestlé Healthcare Nutrition, Inc. respectfully asks this Court to enter judgement against Xcel and in favor of Nestlé as follows:

A. For compensatory damages in an amount to be determined at trial;

B. For Nestlé's lost profits;

C. For Nestle's incidental and consequential damages;

D. For all pre and post-judgment interest;

E. For Nestlé's reasonable attorneys' fees and costs incurred in enforcing the Purchase Agreement; and

F. For such other and further relief as this Court deems proper.

Dated: December 17, 2019

By: /s/ Michael J. Kanute
Michael J. Kanute, Bar No. 6204525
Paul A. Del Aguila, Bar No. 6277356
Bryan D. Pasciak, Bar No. 6330258
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone: (312) 212-6500
mike.kanute@faegrebd.com
paul.delaguila@faegrebd.com
bryan.pasciak@faegrebd.com

*Counsel for Plaintiff*