```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

**NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware Corporation,**

        Plaintiff,

    v.

**XCEL MED, LLC, an Illinois Limited Liability Company,**

        Defendant.

**Case No. 19 C 8225**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Before this Court are Plaintiff Nestlé and Defendant Xcel's calculations of lost profits for the damages this Court awarded to Nestlé in its granting of Nestlé's Motion for Summary Judgment (Dkt. No. 85) and denial of Xcel's Cross Motion for Summary Judgment (Dkt. No. 92). The Court found that Xcel breached a contract it had entered into with Nestlé for the sale of goods (Dkt. No. 123 at 9, 10) ("Purchase Agreement"). Per the Uniform Commercial Code, such a repudiation of a contract for the sale of goods renders Nestlé entitled to damages for lost profits. 810 ILCS 5/2/708.

### I. BACKGROUND

In March of 2019, Nestlé and Xcel entered into a contract for the sale of medical nutrition products. (Purchase Agreement, Pl.'s' Stmt. of Facts, Ex. 1, Dkt. No. 90-1.) The contract, which was to commence on April 1, 2019, was for a term of five (5) years and

Nestlé agreed to sell Xcel its products at significantly reduced prices during the first two years of the agreement. (Purchase Agreement at 1.) In turn, Xcel promised to "commit to purchase a minimum of $6,500,000 and Ninety-five percent (95%) of Products each twelve month." (*Id.* at 1-2.) On June 5, 2019, just over two (2) months into the 5-year term of its agreement, the Court determined Xcel repudiated the contract. After the breach, pursuant to a remedy provision in the Purchase Agreement, Nestlé raised its prices to Xcel. (Compl. ¶ 27.)

## II.  ANALYSIS

### A.  Lost Profits

The Court calculates lost profits by (1) deducting Xcel's purchases of Nestlé products during the relevant time period – April 1, 2019 to April 1, 2021 – from Xcel's total purchase obligation of $6.5 million over two years ($13 million); (2) calculating the profit margin on the lost sales; and (3) deducting Nestlé's excess profits. Here, the excess profits are calculated from Xcel's purchases above the original contract pricing during the relevant 2-year period. Though the parties' estimations of Xcel's purchases diverged, the Court elects to use Xcel's purchase total of $892,568.83 at the original contract pricing. Nestlé did not dispute this figure during the August 15, 2023 telephonic conference. Lost sales thus amount to $12,107,431.17.

The Court then applies Nestlé's estimated profit margin to the lost sales. Nestlé relies on a profit margin it calculated in March 2019 before it entered into the Purchase Agreement. (Harbeck Decl. ¶¶ 10-11.) According to Nestlé's calculations, its profit margin for the contract with Xcel was 32%. Xcel asserts this 32% represents Nestlé's *gross* profit margin as opposed to its *net* profit margin and is therefore an inappropriate basis on which to award lost profit damages. Xcel is right to focus on net profit margin as opposed to gross profit margin. *See Zurich American Insur. Co. v. Hill,* 2021 WL 1600174, at *3 (N.D. Ill. Apr. 23, 2021) ("The calculation of damages for lost profit is based on net profit."). Xcel puts forth a profit margin of 14.05% which it calculated by averaging net profit margins Nestlé made publicly accessible in its 2019 and 2020 consolidated income statements. Nestlé disputes this 14.05% because it represents the profit margin across over 200 Nestlé companies in over one hundred countries and is not tailored to the company or contract at issue. Because Nestlé was unable to confirm that the 32% was net as opposed to gross profit margin, the Court elects to calculate lost profits using the 14.05% profit margin. Further, the Court would not expect a contract with preferred pricing such as the one at bar to result in a profit margin that is over double the average profit across all of Nestlé.

Finally, the Court deducts Nestlé's excess profits of $682,831.57 – Xcel's purchases above the original contract pricing – amounting to a lost profits total of $1,018,262.51.

### B. Prejudgment and Post-Judgment Interest

Nestlé is entitled to prejudgment interest as it is authorized by statute at 5% per year. 815 ILCS 205/2. ("Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing"). In order to award prejudgment interest, "Plaintiff's damages must be fixed and easily ascertainable." *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank,* 265 F.3d 601, 628 (7th Cir. 2001). It is within this Court's discretion to decide whether to award prejudgment interest. *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.,* 611 F.3d 339, 355 (7th Cir. 2010). The Court will award Nestlé 5% prejudgment interest from April 1, 2021 (the end of the two-year Purchase Agreement term) until this Court's December 7, 2022 judgment. This amounts to $85,785.13 in prejudgment interest.

Post-judgment interest at 9% is also authorized by statute. 735 ILCS 5/2-1303. ("[J]udgments recovered in any court shall draw interest at the rate of 9 percent per annum from the date of the judgment until satisfied"). The Court thus awards Nestlé 9% post-judgment interest until Xcel's satisfaction of the judgment.

### C. Attorneys' Fees

Attorneys' fees and costs are not recoverable unless provided under specific statutory authorization, *Tully v. State,* 47 Ill.Ct.Cl. 400 (1994), or the contract expressly provides for attorneys' fees and costs, *Glenstone Homeowners Assn. v. State,* 48 Ill.Ct.Cl. 388 (1996). Here, fee shifting is based on the contractual provision in the parties' Premier Agreement, which governed Xcel's purchases under the Purchase Agreement. The Premier Agreement provided the prevailing party shall be entitled to receive reasonable attorneys' fees and costs. (Dkt. No. 126-6, ¶ 15.9.) Nestlé seeks attorneys' fees in the amount of $296,075.91 and litigation costs in the amount of $12,093.54, which this Court finds reasonable and which it awards.

### III. CONCLUSION

The Court enters judgment in favor of Nestlé as follows: $1,018,262.51 in lost profits; $85,785.13 in prejudgment interest, and $308,169.45 in attorneys' fees and litigation costs for a total damages award of $1,412,217.09. The judgment will accrue a 9% post-judgment interest until satisfied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 8/16/2023